## MARY ANN HOLLY *vs.* BOSTON GAS LIGHT COMPANY.

A child, living in its father's house, cannot maintain an action against a gas company for injury occasioned to it at night, by the gas escaping from their gas pipes in the street opposite the house, over which the child and its father have no control, without proving want of ordinary care on the part of the company in keeping the pipes in repair, and ordinary care on the part of itself and its father; and any want of ordinary care in the father will defeat the action in the same manner as it would in the child, if of full age. And if the father knew of the leak early enough in the previous day to have had it repaired before night, by giving immediate notice to the company; or if the father, finding the escape of gas in the house at night to be dangerous, did not use ordinary care in withdrawing the child from the effects, by removing it out of the house, or otherwise; the action cannot be maintained, although the company's negligence contributed to the injury.

In defence of an action against a gas company, for injury occasioned by their neglect in repairing a leak in their pipes, evidence of their system and course of business in regard to complaints of such leaks is admissible.

ACTION OF TORT, brought by an infant of nine years of age, by her father and next friend, for personal injury occasioned to the plaintiff, while of right in her father's dwelling house. The declaration alleged that the defendants, being the owners and possessed of certain gas pipes laid in the street, and used by them for conducting gas through the street and by and to said house, and being bound to keep them in repair and to keep the gas from escaping therefrom into said house, negligently permitted the pipes to be and continue out of repair, by means whereof large quantities of gas ascended and came into the house, and greatly incommoded the plaintiff and injured her health.

The answer put in issue the negligence of the defendants, the escape of the gas, and the injury to the plaintiff; and averred that any damage suffered by the plaintiff was occasioned by circumstances beyond the defendants' control, and by the want of due caution on the part of the plaintiff and of those having charge of her.

The trial was in this court, before the chief justice, who made the following report thereof:

" There was evidence tending to show that the plaintiff lived in her father's house in South street, Boston, which was supplied with gas through a supply pipe and meter from a main pipe laid down by the defendants along the travelled way of said street; that on the 26th of January 1854 a smell of gas was discovered in the premises of her father, by him, about eleven o'clock in the day, and was supposed by him to proceed from a leak in the meter of a barber's shop, kept by one Lennon, next door to the plaintiff's father's house, which meter was in the cellar under said shop, which cellar was occupied by the father as a coal cellar, and communicated by a door through a brick wall with his cellar kitchen; that the father then advised Lennon to notify the defendants of the leak, which Lennon promised to do at his convenience, and about half past two o'clock in the afternoon sent a notice to the defendants' office; that about three o'clock two servants of the defendants came to examine the leak, and found that it did not proceed from the meter or supply pipe of the barber's shop inside of the building, or from

the meter or supply pipe of Holly; but found the gas coming through the partition wall of the coal cellar of Holly, under Lennon's shop, and through a fissure in the steps of a passage way, next to the barber's shop, and they thus inferred that the leak was in the street; that this information was communicated by them to one Chittenden, superintendent of street leaks of the defendants, who came to the place of the leak between five and six o'clock the same evening, and after an examination, by which he found the leak to be in the street, he determined that, as it was dark, and the frost in the street very deep, it was the safest course, under all the circumstances, that the leak should not be repaired till morning.

" There was conflicting evidence upon the question whether Chittenden gave Holly and his family any caution as to the manner in which they should conduct themselves, in view of the leak; witnesses upon the part of the plaintiff testifying that he did give such caution; and Chittenden denying that he did so, but admitting that he told the barber that he had better keep his windows open, to let out the gas, until he closed his shop for the night — which was done.

" There was also evidence that Holly and his family were somewhat annoyed by the smell of gas during the evening, and took some precautions against explosion in the lower kitchen and cellar during that time; that the plaintiff was put to bed in her usual sleeping chamber in the third story of the house, between eight and nine o'clock; and when her father went to bed, about eleven o'clock, he, finding a strong smell of gas in his own room, went into his children's room, which was adjoining his own, and drew down the window a little way from the top; that during the night, being annoyed and made sick by the gas, and fearing the children might suffer, he again went into his children's room, and drew down the window fully; that, rising very early in the morning, he found the plaintiff on the floor, nearly insensible, and that she had been vomiting from the effects of the gas; and that, upon being brought into the air out doors, together with medical treatment, the plaintiff recovered.

" About seven o'clock in the morning the defendants' servants

11 *

came and opened the street, and found and repaired the leak in the main pipe, about six feet from the junction of Lennon's supply pipe, and opposite to the wall between Holly's house and the barber's shop.

" It was admitted that the defendants were responsible for ordinary care of this main pipe; that the plaintiff or her father had no control over it; and that the gas did not leak from any pipe which either of them was in any way under obligation to keep in repair, or in which either of them had any interest.

" There was conflicting evidence as to what notice the defendants had of the leak, or whether any notice was sent by the father, other than as above stated; also as to the degree of diligence which the defendants used in repairing the leak; also as to its extent and danger; and also as to the degree of care used by the plaintiff's father, in protecting the plaintiff from the consequences of the leak in the night, the plaintiff being at school in the daytime; and there being no evidence that she knew of the leak — all which was submitted to the jury.

" Upon the question of due diligence by the defendants in repairing the leak, the defendants called one Johnson, one of their clerks, as a witness; and, after asking him what was done by the defendants' servants in regard to the complaint of the leak in this case, proposed to inquire of the witness, as tending to show due diligence, what was the system of the defendants in regard to complaints of leaks; and how they were usually treated by the defendants; and what was the course of business in regard to such complaints, in their office, and by their servants. To this the plaintiff objected; but the evidence was held admissible by the court.

" The plaintiff desired the court to instruct the jury upon these facts, 1st, that if they found the plaintiff was at home upon her own land, and the defendants permitted their gas to escape from their pipes in the street, where they had a right to have it, and to flow upon the plaintiff so as to suffocate and injure her, they would be liable in this action for suffering their gas so to injure the plaintiff, whether they were negligent or not in the use, care and management of their gas in the street.

" 2dly. If the court should decline so to instruct the jury, but should instruct them that the defendants were only liable for want of ordinary care in the use of their gas ; that if the damage to the plaintiff arose directly and immediately from a noxious substance, over which the defendants had the sole control for their own profit, being suffered by them to flow upon the plaintiff, it was for the defendants to show that the damage happened from unavoidable accident, or such a state of facts as would justify them, and render the plaintiff's loss therefrom. *damnum absque injuria.*

" 3d. That a leak happening in the pipes of the defendants, and the gas doing damage to the plaintiff when she was where she had a right to be and remain, it was incumbent upon the defendants to show that it was repaired as speedily, and suffered to do as little damage as possible, by the exercise of due diligence, after they had notice of the leak.

" 4th. That the damages happening from a leak in pipes, over which the plaintiff or her father had no control, and in which neither had any interest, any delay in notifying the defendants of the leak, after it was discovered, was not evidence of want of due care on the part of the plaintiff.

" 5th. That under the facts of the case there was no duty upon either the plaintiff or her father in regard to the pipes ; and so the question of due care did not arise, in this case, as to the leak.

" 6th. That if any question of due care on the part of the plaintiff did arise in the case, then, the plaintiff being of tender years, the question of how much care and diligence ought to have been used by her, is to be judged of by the jury in reference to her age and capacity ; and that the plaintiff's action was not to be affected by any want of care on the part of her father, if the jury should find her blameless, and that she had suffered damage by reason of the defendants' negligence.

" The presiding judge declined to give either of these instructions prayed for; but did instruct the jury, amongst other things, that to entitle the plaintiff to recover, under the circumstances of the case, she must show affirmatively :

" First. That the damage happened to her from some want of ordinary care on the part of the defendants, either in laying down, managing or repairing their gas pipes; and that what was ordinary care must be judged of according to the subject matter, the force and danger of the material under their charge, and the circumstances of the case, and such as ordinary prudence would dictate.

" Secondly. That, in regard to the injury, the plaintiff must show affirmatively that she and her father, who had her in charge, were in the exercise of ordinary care; that any want of such care on the part of her father would defeat this action, in the same manner that such want of ordinary care would do, if she were of full age, and had shown the same want of care herself; or, in other words, that, being under the control of her father, she would bear the consequences of any want of ordinary care on his part, in reference to the injury she had sustained; and that if the plaintiff's father discovered the leak early enough in the day to have had it repaired before night, had he at once notified the company, and if in consequence of such want of notification the leak was not repaired that night, and the plaintiff was injured by the escape of gas therefrom, such delay of notification by the father would be evidence, to be considered by the jury, of want of such ordinary care as would defeat the plaintiff's action, although the defendants may have been negligent; and also that if the father, finding the escape of gas into his house in the night time to be dangerous, did not use ordinary care in withdrawing the plaintiff from its effects, by removing her elsewhere, or otherwise, he would thereby have contributed to the plaintiff's injury, and she could not recover in this action, although the defendants' negligence also contributed to the damage she had sustained.

" The jury found for the defendants. If either of the several rulings is erroneous, the verdict is to be set aside, and the cause to stand for trial; otherwise, judgment is to be entered for the defendants."

*B. F. Butler & B. Dean,* for the plaintiff. If the gas was poured by the defendants through their pipes upon the plaintiff

while at home, where she had a right to be, the defendants are liable for the injury to her, whether they were negligent in the management of their pipes or not. *Lambert* v. *Bessey*, T. Raym. 422. *Leame* v. *Bray*, 3 East, 599. *Brown* v. *Kendall*, 6 Cush. 292. *Underwood* v. *Hewson*, 1 Stra. 596. *Guille* v. *Swan*, 19 Johns. 381. *Covell* v. *Laming*, 1 Camp. 497. *Lotan* v. *Cross*, 2 Camp. 465. 1 Chit. Pl. (6th Amer. ed.) 143, 148. Steph. N. P 210, 1004, 2362, 2630, 2634. The distinction between trespass and case is rendered immaterial by the practice act, *St.* 1852, *c.* 312, § 1.

In *Holden* v. *Liverpool New Gas & Coke Co.* 3 C. B. 1, relied upon by the defendants, the gas escaped by reason of the negligence of the plaintiff in not turning a stopcock within his house. And in *Moreton* v. *Hardern,* 4 B. & C. 223, and *Claflin* v. *Wilcox,* 18 Verm. 605, the only other cases cited by the defendants to this point, due care on the part of the plaintiff was not alleged.

The defendants, in order to excuse themselves from the injury occasioned to the plaintiff by this noxious substance, controlled solely by them for their own profit, were, at least, bound to show that it was the result of unavoidable accident. *Cole* v. *Fisher*, 11 Mass. 137. *Moody* v. *Ward*, 13 Mass. 299. *Gates* v. *Neal*, 23 Pick. 308. *Leame* v. *Bray*, 3 East, 599. Or, at least, that they repaired the leak as speedily as possible in the exercise of due diligence after receiving notice thereof.

The plaintiff and her father, being in their own house and upon their own land, could not be deprived of a right of action for an injury resulting from a leak in pipes over which they had no control, by remaining in their own house, or by a delay in giving the defendants notice of the defect; and so the question of due care on the part of the plaintiff does not arise.

If any such question does arise, the plaintiff's tender age and consequent helplessness and ignorance are to be taken into consideration in judging of the degree of care required. *Lynch* v. *Nurdin*, 1 Ad. & El. N. R. 29, approved in *Powell* v. *Deveney*, 3 Cush. 305. The negligence of her father cannot affect her cause of action. The father is not the servant or agent of the child — which is the only ground of the decisions holding one

person bound by the negligence of another. *Hartfield* v. *Roper* 21 Wend. 615. *Thorogood* v. *Bryan*, 8 C. B. 115. If the father's negligence or wilful wrong contributes to the injury, is the child barred of its remedy against the other wrongdoer?

The evidence of the defendants' system of doing business was incompetent evidence of their having used due care in a particular instance.

*C. P. Curtis & C. P. Curtis, Jr.* for the defendants.

MERRICK, J. This is an action of tort, brought by the plaintiff, an infant of the age of nine years, to recover compensation for damages alleged to have been sustained by her in consequence of the negligence of the defendants in suffering their pipes to be and remain out of repair, whereby the gas contained in them escaped and inflicted upon her the injury complained of. Under our present system of pleading, an action of tort is sufficiently comprehensive to embrace all the cases in which a remedy was formerly afforded, either by an action of trespass or an action of the case. An action of tort may therefore now be supported by proof of facts which would have been sufficient to maintain either of those actions. *St.* 1852, *c.* 312, § 1.

But it is equally apparent, both from the plaintiff's declaration and from the facts and circumstances stated in the report, that no trespass has been committed upon her. All the evidence reported shows that the injury complained of, and for which she contends that the defendants are responsible, was not the immediate result of any act done or committed by them, or by any of their servants. The point in controversy at the trial was, whether it was not caused by their negligence or want of ordinary care. The distinction is obvious and well known. An injury is considered immediate, and therefore a trespass, only when it is directly occasioned by, and is not merely a consequence resulting from the act complained of. "If a person pour water on my land, the injury is immediate; but if he stop up a watercourse on his own land, or if he place a spout on his own building, in consequence of which water afterwards runs therefrom into my land, the injury is consequential, and will not render the act itself a trespass." 1 Chit. Pl. (6th Amer. ed.)

146. The defendants lawfully laid down their pipes in the public street, and filled them with gas. If they failed to discharge their duty in regard to its distribution, and negligently suffered it to escape, they were liable therefor to other parties for all consequential damages, and might be proceeded against for the recovery of compensation, in an action in the nature of an action of the case, but not as trespassers, in an action of trespass. This being the ground and limitation of the responsibility of the defendants, it is manifest that the plaintiff's first and second prayers for instructions were not applicable to the case, and were therefore rightly rejected.

It is not necessary to consider, particularly and in detail, the further instructions which were desired by the plaintiff's counsel. The propositions contained in them are all covered and embraced in the instructions which were actually given to the jury.

The defendants being authorized to lay down their pipes, and to convey gas in and through them, under the surface of the public streets, to various parts of the city, it is undoubtedly their duty to conduct their whole business, in all its branches, and in every particular, with ordinary prudence and care. No exact legal definition of these words, which will embrace all their meaning and be precisely applicable to every possible case, can be given. That is to say, there is no such thing in existence as an absolute standard of ordinary care and prudence, to which the conduct of individuals in each particular instance can be brought, and by which it can be compared and tested. Care and diligence should always vary according to the exigencies which require vigilance and attention, conforming in amount and degree to the particular circumstances under which they are to be exerted. But it must be equal to the occasion on which it is to be used, and is always to be judged of, as the jury were in this case accurately advised, " according to the subject matter, the force and danger of the material under the defendants' charge, and the circumstances of the case."

As this action is founded upon the alleged omission of the defendants to discharge their duty in keeping their pipes in a sound and safe condition for the transmission and distribution

of gas, it was necessary for the plaintiff, in order to maintain it, to show that they failed, in this respect, to exercise due and ordinary care. The burden of proof was upon her to establish this failure as a fact. *Adams* v. *Carlisle,* 21 Pick. 146. *White* v. *Winnissimmet Co.* 7 Cush. 155. 2 Greenl. Ev. § 473.

It was also incumbent on her to prove that she herself used ordinary care for her own protection against the noxious influence of the gas. She had no right to expose herself carelessly or wilfully to its injurious effects, and thereby make the defendants responsible for the mischievous consequences resulting from such exposure. It was said by Lord Ellenborough that " a party is not to cast himself upon an obstruction which has been made by the fault of another, and avail himself of it, if he do not himself use common and ordinary caution to be in the right." *Butterfield* v. *Forrester,* 11 East, 60. The case in which the rule of law was thus stated has often been referred to by this court with approbation, and the rights of parties determined according to the doctrine considered there to be established. *Smith* v. *Smith,* 2 Pick. 621. *Adams* v. *Carlisle* and *White* v. *Winnissimmet Co.,* above cited.

Nor does it make any difference that the plaintiff is a minor. She was under the care of her father, who had the custody of her person, and was responsible for her safety. It was his duty to watch over her, guard her from danger, and provide for her welfare, and it was hers to submit to his government and control. She was entitled to the benefit of his superintendence and protection, and was consequently subject to any disadvantages resulting from the exercise of that parental authority which it was both his right and duty to exert. Any want of ordinary care therefore, on his part, is attributable to her, in the same degree as if she were wholly acting for herself. And for this reason the defendants were properly allowed to show any conduct on his part, indicating a want of ordinary care in adopting suitable precautions against the hurtful effect of the gas after it was discovered to be penetrating and pervading the house where they resided. It was for the jury to consider whether there was not a manifest want of prudence in remaining in the house after it

became known to its inmates that it was being filled with the gas which was escaping from the leak in the pipes. And it was their province also to decide whether the immediate communication to the officers or agents of the gas company that such a leak had occurred was not a necessary, or at least a reasonable measure of precaution, of which those who were liable to suffer from inhaling a noxious substance ought to have availed themselves. In this view, it was competent for the defendants to offer proof of the conduct of the plaintiff and her father, that the jury might have the means of determining whether she had not herself neglected to use ordinary care in seeking relief, or resorting to expedients which might readily have been availed of for her own protection and security.

In the course of their defence, the defendants called Johnson, one of their clerks, as a witness; and having first obtained his testimony as to what was actually done by them, or by persons in their employment, after the fact of the leak came to their knowledge, they proposed further to inquire of him, as tending to show due diligence on their part, what was the system of the company in regard to complaints of leaks, how they were usually treated, and what was the established course of proceeding in applying remedies and making needful repairs on the part of their officers, and by their employees and servants. This inquiry was objected to by the plaintiff; but the objection was overruled, and the evidence admitted. And, under the particular circumstances of the case, we think the ruling was correct, and that the evidence was properly allowed to be submitted to the jury. Indeed, upon the broad and general question of due diligence, it seems indispensable to an intelligent and correct determination. The defendants, under their charter, were in the enjoyment of a great and peculiar privilege, that of supplying the means of light to all parts of the city. This devolved upon them a corresponding degree of responsibility in the conduct of their business, and in the preservation of every part of their apparatus from defects by which the public at large might be subjected to great inconvenience, and particular individuals might also be exposed to imminent peril and danger in respect

both to their property and their lives. They were therefore under the highest degree of obligation to be at all times in a state of the most ample preparation to meet, with all reasonable promptitude and dispatch, whatever exigency might occur requiring their attention. But it is manifestly impossible that they should have had at their service, at every moment and at every point of exposure, an adequate force to overcome a sudden fracture of their pipes, or any other casual and unexpected obstacle in the conduct of their affairs in the shortest possible time. All that they can reasonably be required to do is to afford ample facilities to all parties interested to make communications to them, to institute and maintain an efficient system of oversight and superintendence, and to be prepared with a sufficient force, ready to be put in action, and fully competent to supply and furnish a prompt remedy for all such accidents, defects and interruptions in the conduct of their affairs, as, from experience, and the character and peculiarity of their works, there was any reasonable ground to anticipate might occur. To know, therefore, whether due diligence has been exerted in any particular instance, it is necessary to know what is their general system, and what are the means of relief at their command, and within their control. If the system is all right, and all due preparation has been made in advance, and the force which can be commanded is applied in a proper manner to the reparation of a break in the pipes, or correction of any disturbance in the regular operation of their business, they cannot be held to have failed in the exercise of ordinary care, even though it should happen that, owing to the occurrence of several interruptions or leaks at the same moment of time, through an extraordinary state of the weather, or other unforeseen causes, a particular defect should fail to be overcome with the same promptitude and dispatch that it might be under other and more favorable circumstances. It was for this purpose, as the ruling of the presiding judge is to be understood, that the testimony of Johnson, objected to by the plaintiff, was admitted. It was not allowed for the purpose of showing that the company exerted the same degree of diligence in this as they did in other like instances

nor was it ruled that they would be exonerated from responsibility on the occasion complained of by the plaintiff, if they acted up to the standard which they had themselves established as the rule of ordinary diligence. If this had been the object of the evidence it ought to have been rejected. But upon the more broad and general ground of exhibiting their system and plan of action, the means provided for conducting the great enterprise confided to their management and control, the evidence proposed seems to be peculiarly fit and appropriate, if indeed it ought not to be regarded as absolutely indispensable. Without it, it is difficult to see how, amidst contradictory statements and conflicting proofs, the jury could determine, with any confidence in the correctness of their conclusions, whether the defendants were supine and negligent, or acted with the vigor and efficiency demanded by the rule requiring the exercise of ordinary care and prudence.

The several rulings and instructions of the presiding judge, which were objected to by the plaintiff, appearing to us to have been all accurate and correct, judgment must be entered upon the verdict for the defendants.